IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REGNERY PUBLISHING, INC.,
One Massachusetts Avenue, NW
Washington, D.C. 20001

                CASE NO.:

        Petitioner,

vs.

RICHARD MINITER,
2420 S. Queen Street
Arlington, VA 22202

        Respondent.

PETITION TO CONFIRM ARBITRATION AWARD

      Pursuant to 9 U.S.C. § 9, Petitioner REGNERY PUBLISHING, INC., through counsel, states as follows:

      1.     REGNERY PUBLISHING, INC. ("Regnery"), is a book publisher with its principal place of business at One Massachusetts Avenue, NW, Washington, D.C. 20001.

      2.     RICHARD MINITER ("Miniter"), 2420 S. Queen Street, Arlington, Virginia, is an author who has contracted with Regnery to publish books that he has authored.

      3.     This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are diverse and the amount in controversy, as shown below, exceeds $75,000.

      4.     On or about February 14, 2005, Regnery and Miniter entered into a publishing contract pursuant to which Regnery would publish two books to be written by Miniter. A copy of the contract is attached as Exhibit A.

      5.     The contract contains an arbitration provision, which states in its entirety as follows:

> Any controversy or claim arising out of or relating to this agreement, the interpretation, implementation, breach or subject matter thereof, shall be settled by arbitration in the District of Columbia, in accordance with the laws of the District of Columbia and the rules of the American Arbitration Association. Judgment upon the award made by the arbitrators may be entered in any Court having jurisdiction thereof.

6.      A dispute arose between the parties under the contract, with Regnery claiming a breach by reason of non-delivery of a second manuscript for publication by June 15, 2006, as required by the parties' agreement.

7.      In April 2007, Regnery filed a demand for arbitration against Miniter with the American Arbitration Association, Commercial Arbitration division. John R. Keys, Jr. was appointed as arbitrator.

8.      On January 15, 2008, the arbitrator held a hearing in Washington, D.C. and heard testimony and received documentary evidence. Following the hearing, opening briefs and replies were submitted and exchanged by each party.

9.      Having considered the parties' evidence, briefs and replies, the arbitrator entered an Award dated March 10, 2008, which awarded damages to Regnery in the amount of $150,509.53, plus fees and expenses in the amount of $8,918.75, for a total award of $159,428.28. A copy of the Award of Arbitrator is attached as Exhibit B.

10.     Pursuant to the Award, Miniter was to pay all sums owed to Regnery "on or before 30 days from the date of this Award." More than thirty days has elapsed since the Award was entered and Miniter has yet to make payment.

WHEREFORE, Petitioner Regnery moves this Court for an Order confirming the Award in the sum of $159,428.53 plus interest at the legal rate permitted under District of Columbia law from the date of the Award; directing that judgment be entered thereon; and that

petitioner be allowed the costs of this proceeding, and that petitioner have such other, further and different relief as to this Court may seem just and proper.

Respectfully submitted,

Mark I. Bailen (459623)
Baker & Hostetler, LLP
1050 Connecticut Avenue, N.W.
Suite 1100
Washington, D.C. 20036
Tel: (202) 861-1500
Fax: (202) 861-1783
Email: *mbailen@bakerlaw.com*

*Attorney for Petitioner*

## CERTIFICATE OF SERVICE

A copy of the foregoing **Petition to Confirm Arbitration Award** and accompanying

papers were served by hand delivery this 25th day of April upon the following:

John M. Shoreman
McFadden & Shoreman, LLC
1420 New York Avenue, N.W.
Suite 700
Washington, D.C. 20005

*Attorney for Respondent*

Mark I. Bailen (459623)
Baker & Hostetler, LLP
1050 Connecticut Avenue N.W.
Suite 1100
Washington, D.C. 20036
Tel: (202) 861-1500
Fax: (202) 861-1783
Email: *mbailen@bakerlaw.com*

*Attorney for Petitioner*

# EXHIBIT A

**REGNERY**
**PUBLISHING, INC.**
*An Eagle Publishing Company • Since 1947*

**PUBLISHING CONTRACT**

AGREEMENT made this 14th day of February 2005, between Richard Miniter, c/o William Morris Agency, 1325 Avenue of the Americas, New York, NY 10019 (hereinafter "Author") and Regnery Publishing, Inc., One Massachusetts Avenue NW, Washington, D.C. 20001, (hereinafter "Publisher").

In consideration of the mutual promises and covenants made herein, Publisher and Author (the "parties") agree as follows:

1.      Grant of Rights.

        Author hereby grants and assigns to Publisher, its licensees and assigns for the full term of the copyright and any extension thereof, the exclusive right, title and interest in the English language to print, publish and market ("publish") and license subsidiary rights throughout the World, in book form (hardcover and softcover) and electronic form two books, which have been or will be written by Author ("the Works"); the first book is tentatively entitled, *Propaganda*.

2.      Publication and Royalties.

        a.      Publisher hereby agrees to publish each Work within twelve (12) months after the acceptance of the final manuscript of each Work, except that such twelve (12) month period shall be extended for a period of time equal to any delay caused by Author or by any circumstance beyond the Publisher's control.

        b.      Publisher shall pay Author an advance against all royalty income in the amount of $355,000; $121,666 of which will be paid upon the signing of this agreement; $116,667 upon Publisher's final acceptance of the manuscript for the first book; and $166,667 upon Publisher's final acceptance of the manuscript for the second book. For purposes of royalty payments it will be assumed that $180,000 of the total advance will be assigned to the first book, and $175,000 will be assigned to the second book.

        c.      Publisher shall pay Author an additional advance against all royalty income of five thousand dollars ($5,000) for each week that each Work is listed on the printed New York Times Best Seller List (any of the top 15 positions), provided, however, that no more than $50,000 shall be paid for each book in such additional advances pursuant to this paragraph. Such payment to be made no later than thirty (30) days after the relevant list appears in print.

        d.      On all books sold to the book trade, Publisher shall pay Author a royalty of fifteen percent (15%) of Publisher's catalog retail price for all books sold and for which Publisher has been paid after returns, for hardback books; and seven and one-half percent (7.5%) of such retail price for all trade paperback books in each case after returns.

Miniter Publishing Contract
Page 2

e.    On all copies of the Works, complete or abridged, published and sold by other than Publisher, such as book club editions, paperback editions, abridged editions, and on the sale of all rights to the Works, including but not limited to paperback, second serial rights, electronic rights now known or to be developed in the future, of the verbatim text, without adaptation, the result of which serves as a substitute for sales of the Works in book form, Publisher and Author shall divide the gross proceeds equally, without deduction of any agent commissions, provided, however, as regards second serialization, the periodical and cut shall be subject to the Author's approval, not to be unreasonably withheld or delayed, and further provided, that prior to Publisher's use or disposition of electronic rights granted herein, Author and Publisher shall agree upon the royalties.   Author shall retain first serial rights.  Author retains foreign language rights to the Works.

f.    Notwithstanding paragraph 2(b) or 2(c) hereof, on sales to additional markets outside regular bookstores or outside of the booktrade, by means of direct mail circulation and coupon advertisements in newspapers or other periodicals and on premium sales and sales to organizations outside the book trade for resale or promotional use, and on the sale of books to bookclubs Publisher shall pay Author ten percent (10%) of the amount received by the Publisher in excess of its manufacturing costs and returns.  Such sales shall be subject to Author approval, such approval not to be unreasonably withheld.

3.    Manuscript.

a.    Author shall deliver to the Publisher no later than June 15, 2005, a complete copy of the first Work, and on June 15, 2006, a complete copy of the second Work; in each case, in hard copy and on computer disk, in content and form satisfactory to the Publisher, together with all permissions necessary for the reproduction of copyrighted material therein secured at Author's expense. Author agrees to supply with the manuscripts and suitable for reproduction all mutually agreed upon photographs, illustrations, drawings, charts and other material necessary to complete the Works and if Author fails to do so, the Publisher shall be entitled to supply them and charge the cost against any royalty sums payable to Author.

b.    Should Author fail to deliver the complete and satisfactory manuscript of the Works to the Publisher on the above dates (unless such date is extended by an agreement signed by an officer of the Publisher) the Publisher, if it so elects, may notify Author in writing that it intends to cancel this contract; in such case Author shall have thirty (30) days in which to supply the manuscript to publisher; if Author fails to deliver the manuscript in said thirty (30) day period, Author shall repay the Publisher all sums previously paid to Author by the Publisher.

c.    The Publisher may make the manuscripts conform to such style of punctuation, spelling, capitalization and usage as it deems appropriate, and may edit the manuscripts in a manner subject to Author's approval.

d.    All decisions as to format, style of printing and binding, cover presentation, trademark, logo, imprint or other identification, retail price, and all other matters involving terms

Miniter Publishing Contract
Page 3

of sale, distribution, advertising, and promotion of the Works shall be within the Publisher's sole discretion; provided, however, Author shall have approval of flap copy and cover design, such approval not to be unreasonably withheld. The initial publications shall be in hardcover.

4.      Statements of Accounts.

        a.      Publisher shall render to Author semi-annual statements of account in the months of March and September covering sales of the Works to the last day of December and June preceding, and shall pay with the statements all monies indicated therein as due to Author, less a reasonable reserve against returns of copies of the Works.

        b.      The statement shall include an accounting of all copies of the Works sold by Publisher in the accounting period and the proceeds therefrom, and all returns, and total number of copies that Publisher then has in stock.

        c.      Author shall have the right, upon prior written request, to examine at reasonable times the books of account of the Publisher insofar as they relate to the Works; such examination shall be at the sole expense of Author unless errors of accounting amounting to five percent (5%) or more of the total sum paid to Author with respect to the period examined shall be found to Author's disadvantage, in which case, the reasonable cost of such examination shall be borne by the Publisher.

        d.      If as of any particular accounting rendered under Paragraph 4 hereof the amounts credited to the Author's account under the terms of this Agreement exceed the advances actually paid to the Author as of such accounting the Publisher shall pay with such accounting the amount of such excess. However, the Publisher's obligation to pay advances under Paragraph 2(b) shall be reduced by the amount of payments made in this manner. Such reductions shall be applied in chronological order to the advance installments remaining to be paid as of the date on which any such payment is made.

5.      Author's Warranties.

        Author hereby represents and warrants:

        a.      That he owns all right, title and interest to the Works.

        b.      That the Works are original and do not include, and are not derived from, the work of any other, except as indicated in the bibliography supplied therewith, and that all statements purporting to be facts are true.

        c.      That the Works have not previously been published or distributed, except as indicated in the manuscript, and Author has not entered into any other arrangements or agreement with respect to the Works in the United States or elsewhere.

Miniter Publishing Contract
Page 4

    d.    That the Works contain no libelous, obscene, or other unlawful matter.

    e.    That the Works do not infringe upon any statutory or common law copyright or trademark, and that any recipe, formula, medication or instruction included in the Works is not injurious to the users' health.

    f.    The warranties and representations contained in this Agreement extend to licensees and successors and assigns of the Publisher.

6.    Author's Undertakings.

    a.    Author shall indemnify and hold Publisher harmless, from any claim that may be asserted on the ground that the Works contain matter that is untrue, libelous, obscene, or otherwise unlawful, or infringes another's copyright or other lawful right or alleges facts contrary to or inconsistent with any of the representations and warranties made by Author in this Agreement. If a lawsuit is instituted against Publisher on any of these grounds, Publisher and Author shall cooperate in the defense and shall share the costs thereof equally; provided, however, that if a final judgment is entered against Publisher, Author shall be responsible for payment of any damages, fines or other money owed under that judgment and shall reimburse Publisher for all of its costs in connection therewith or resulting therefrom, including reasonable attorney's fees; and provided further, that if Publisher makes any settlement payment prior to a final judgment in such lawsuit, without Author's prior written approval, then Author shall have no further responsibility to Publisher in connection with the lawsuit or the claims that are its subject matter. Upon receiving notice of any claim, demand, action or suit or other legal proceeding alleging facts inconsistent with or contrary to any of the warranties or representations contained in this agreement, the Publisher shall have the right to withhold any sums payable to Author in reasonable amounts as security for the payment of Author's potential obligations pursuant to the indemnity contained herein, provided, however, in the event no legal proceedings have been instituted within one (1) year from the date of receipt of any claim or demand, Publisher shall promptly pay to the Author all withheld sums.

    b.    Author shall promptly upon receipt review, correct, and return to Publisher all proof sheets of the Works. Publisher and Author will agree after each completed manuscript has been submitted whether an index is required; if so, such index shall be charged to Author's royalty account. The costs of any changes (but not corrections) in proof copy requested by Author shall be charged to Author's account to the extent that they exceed five percent (5%) of the costs of the proofs without such changes.

    c.    Author shall cooperate with Publisher in promotion of the Works and shall be available for interviews and other promotional activities as requested by Publisher at mutually agreed upon times and places at Publisher's sole cost and expense. It is understood that Author will use his own residence and transportation while in the Washington, DC area, and the Publisher will not incur any housing or local transportation expenses related to such stays.

Miniter Publishing Contract
Page 5

d.    The warranties, representations and indemnity of Author herein shall survive termination of this agreement for any reason.

7.    Publisher's Undertakings.

a.    Publisher shall affix to all copies of the Works a copyright notice in the form and place prescribed by law, in Author's name and shall register copyright in the Works with the U.S. Copyright Office; and Publisher shall take all necessary or prudent steps to protect the copyright in the Works when selling or licensing any rights in connection therewith.

b.    Publisher shall give Author fifty (50) copies of each Work without charge and hall sell any additional copies to Author at a discount of fifty percent (50%).  Author shall not be entitled to royalties on account of such books.

c.    Publisher shall provide to Author a written marketing plan for each book two months prior to each book's launch, provided Author has met with Publisher in advance to discuss marketing ideas and opportunities.

d.    Publisher shall provide to Author weekly Bookscan sales reports, provided such reports are available to Publisher from Bookscan, and Publisher shall provide to Author monthly returns reports on or about the 15th of the subsequent month.

8.    Copyright Infringement.

Publisher and Author shall jointly have the right to prosecute any infringement of the copyright in the Works.  If the parties proceed jointly, the expenses and recovery, if any, shall be shared equally.  If either party refuses to join the prosecution, the other party shall have the right to proceed alone and, in that case, shall bear and recoup all expenses of the proceeding and shall share equally all recovery therefrom.  If the suing party shall not hold the record title to the copyright, the other party shall permit the action to be brought in his or its name.

9.    Right to Cancel.

a.    If Author does not review, correct and return proof sheets to Publisher within thirty (30) days of Author's receipt thereof, Publisher may cancel this contract by written notice to Author.

b.    If the Publisher determines that any one of Author's warranties, as set forth in paragraph 5 hereof, is breached, Publisher may terminate this contract by written notice to Author.  If Author has not cured the breach as set forth by Publisher within thirty (30) days of such notice, this contract shall be deemed null and void, and Author shall return all sums previously paid but unearned to Publisher.

Miniter Publishing Contract
Page 6

      c.     If Publisher does not publish the Works on or before the dates provided herein, Author may at any time thereafter serve written notice on Publisher requiring the Publisher to publish the Works. If the Publisher does not comply within ninety (90) days after receipt of such written demand, then this Agreement shall terminate without further notice at the end of such ninety (90) day period.

      d.     If the Publisher's stock of either Work falls below two hundred and fifty (250) copies, and Author makes written demand to reprint it, the Publisher shall, within sixty (60) days after the receipt of such demand, notify Author in writing if it intends to comply. If Publisher fails to reprint the Work in question within six (6) months of such notification, this agreement shall terminate and all rights granted hereunder shall revert to Author.

      It is also understood that if for two (2) consecutive accounting periods neither the Publisher, nor a licensee of the Publisher has in its inventory printed copies of either Work available for sale in the United States but copies of such work are available for sale by means of on-demand printing or electronic transmission or reproduction, and within these two (2) accounting periods, the Publisher or its licensee(s) collectively have sold less than two hundred and fifty (250) copies of such Work, such Work shall be deemed out-of-print. Each of the two Works shall be treated individually for the purpose of out-of-print.

      e.     In the event of a termination by either party under this paragraph, all rights conveyed hereunder shall revert to their grantor and the parties shall have no further claims upon each other except for obligations already incurred, and except that Author shall return all monies paid to him by Publisher for advances on royalties in the event of termination before publication due to breach of any of Author's warranties as set forth in this agreement.

10.    Force Majeure.

      Neither party shall be in default of any provision of this contract requiring an act to be performed by a certain date or within a specified time period if delay was caused by strikes, fires government restrictions, sickness, or other circumstances beyond the control of that party; and the time for performance shall be extended until the removal of the impediment, except that if the delay persists for more than three (3) months, the party entitled to the performance may terminate this contract by giving written notice to the other party.

11.    Remainders.

      If the Publisher at any time has unsold or returned copies of the Works on hand which in its judgment could not be sold on usual terms in a reasonable time, Publisher will first offer Author said copies at forty percent (40%) of U.S. retail price, and Author may purchase as many copies as he desires. If Author fails to respond to Publisher's offer to purchase same within thirty (30) days, Publisher may remainder said copies of the Works to such buyers and upon such terms

Miniter Publishing Contract
Page 7

as the Publisher may decide. If such stock is sold at or below the Publisher's cost, no royalty shall be paid Author on such remainder sales. If such stock is sold above the Publisher's cost, the Publisher shall pay Author as a royalty five (5%) percent of the amount received by it in excess of Publisher's cost. Publisher may destroy or otherwise dispose of all copies not remaindered.

12.    Assignment.

    a.    Author shall not assign his personal undertakings hereunder without the prior written consent of Publisher, which consent shall not be unreasonably withheld.

    b.    Publisher may only assign this contract with the written consent of Author, whose consent shall not be unreasonably withheld, except that this contract may be assigned without permission in the connection of a sale of all or substantially all of the Publisher's assets.

    c.    In the event of the insolvency of Publisher, or of an assignment for the benefit of creditors, or the filing of a petition in bankruptcy by or against Publisher, this contract shall be deemed automatically terminated and all rights in the Works shall revert to Author; and any monies owing Author hereunder shall be deemed to be held by Publisher in trust for Author and shall immediately be paid to Author.

13.    Option.

    As part of the consideration paid to Author by Publisher hereunder, Publisher shall have the first opportunity to read and consider for publication the manuscript or detailed outline of Author's next literary work suitable for publication in book form, and of acquiring the same rights on mutually agreed upon terms and conditions. If, four (4) weeks after such Work has been submitted to the Publisher, no terms have been agreed upon for its publication, then Author shall be at liberty to enter into an agreement with any other publisher for its publication.

14.    Arbitration.

    Any controversy or claim arising out of or relating to this agreement, the interpretation, implementation, breach or subject matter thereof, shall be settled by arbitration in the District of Columbia, in accordance with the laws of the District of Columbia and the rules of the American Arbitration Association. Judgment upon the award made by the arbitrators may be entered in any Court having jurisdiction thereof.

    Agency Clause

    All payments due hereunder shall be made payable to and in the name of William Morris Agency, 1325 Avenue of the Americas, New York, NY 10019 as agents for Richard Miniter.

Miniter Publishing Contract
Page 8

15.     Competing Work.

Author shall not within one (1) year after publication of the second Work authorize the publication of a book on a similar subject or without the written permission of the Publisher.

16.     Entire Agreement

This Agreement constitutes the entire agreement between the Publisher and Author, and supersedes any discussions or agreements which may have preceded this Agreement. This Agreement cannot be amended, modified, or waived except in a writing signed by the party (or its duly authorized agent) against whom such amendment, modification or waiver is to be enforced.  Without limiting the generality of the foregoing, whenever the Publisher or Author shall be given a right to terminate this Agreement pursuant to any of the provisions of this Agreement, no negotiations between the Publisher and Author nor any other act of the Publisher or Author (other than an express waiver in writing signed by an authorized agent of the Publisher or by Author) at any time shall be deemed a waiver of the right of termination nor of the effectiveness of any notice of termination.  This Agreement is not binding on the Publisher, and the Publisher is not obligated with respect to the Works, unless and until this Agreement is executed by the President of the Publisher. This agreement shall be binding in the event it is signed in counterparts.

Interactive electronic multimedia rights to the text of the Works with non-textual elements such as sound, musicals, visuals, graphics or other multimedia features are reserved to the Author for the Author's sole use and disposition.

Advertisements may not be inserted or printed in any edition of the Works, whether issued by the Publisher or its license(s) without the Author's prior written consent.

All rights not specifically granted hereunder are reserved to the Author for his own use and disposition. Reserved rights include, but are not limited to, the right to publish or cause to be published in any form, excerpts, summaries, novelizations or dramatizations, of television and/or motion pictures of the Work, thereof not to exceed seventy-five hundred (7,500) words in length to be used for advertising and exploitation of television and/or motion pictures based upon the Works.

Agreed:

_____

_____
Social Security Number

REDACTED

Regnery Publishing, Inc.

by: _____

# EXHIBIT B

Duplicate

## AMERICAN ARBITRATION ASSOCIATION
### Commercial Arbitration Tribunal

| | | |
|---|---|---|
| **REGNERY PUBLISHING, INC.,** | ) | |
| | ) | |
| *Claimant,* | ) | |
| | ) | |
| **and** | ) | **No. 16 143 00290 07** |
| | ) | |
| **RICHARD MINITER,** | ) | |
| | ) | |
| *Respondent.* | ) | |
| | ) | |

### <u>AWARD OF ARBITRATOR</u>

THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated February 14, 2005, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, does hereby, FIND and AWARD, as follows:

On February 14, 2005, Claimant Regnery Publishing, Inc. (Regnery) and Respondent Richard Miniter (Miniter) entered into a Publishing Contract pursuant to which Regnery would publish two books to be written by Miniter ("Publishing Contract"). The Publishing Contract called for Miniter to deliver a complete manuscript for the first book by June 15, 2005, and a complete manuscript for the second book by June 15, 2006. The Contract also gave Regnery a first option to read, consider and acquire Miniter's "next literary work suitable for publication in book form."

The Publishing Contract provided for payment to Miniter of royalties and advances against royalties, which lie at the center of the present dispute. Paragraph 2.b of the Publishing Contract reads:

> [Regnery] shall pay [Miniter] an advance against all royalty income in the amount of $355,000; $121,666 of which will be paid upon the signing of this agreement; $116,667 upon [Regnery's] final acceptance of the manuscript for the first book; and $166,667[1] upon [Regnery's] final acceptance of the manuscript for the second book. For purposes of royalty payments it will be assumed that $180,000 of the total advance will be assigned to the first book, and $175,000 will be assigned to the second book.

Regnery paid Miniter the $121,666 advance due upon signing.

---

[1] The parties acknowledge that this figure is in error and should be $116,667.

In a separate agreement, called the Publicity Expense Agreement, signed in June 2005, Regnery agreed to pay Miniter an additional $25,000 in connection with a trip to Afghanistan. The Publicity Agreement states:

> Both parties agree that if 60 Minutes does not air any story related to Miniter's trip to Afghanistan, then this $25,000 shall be recoverable as if it were an additional advance against royalties earned. If, however, CBS does air a segment related to Miniter's trip to Afghanistan, this $25,000 shall not be recoverable as an advance, but shall be treated as an expense by the Publisher.

Regnery paid Miniter the $25,000. 60 Minutes did not air the Miniter segment.

Miniter delivered the final manuscript for the first book in early September 2005, and Regnery paid the $116,667 advance due, bringing to $263,333 the total advances paid to Miniter.

Regnery published the first book in October 2005 under the title *Disinformation*. As of the hearing in this arbitration, the record reflects that the book had earned royalties of $116,433. There may be additional royalties earned subsequent to that figure.

On January 24, 2006, Miniter presented to Regnery's Acquisition Committee his idea for a book on Abu Musab Zarquawi, the Jordanian al-Quaeda terrorist then operating in Iraq. The Committee "grilled" Miniter on his proposal to the point he thought Regnery would not accept it. Nevertheless, shortly after the Committee meeting, Miniter presented a proposed budget for his research and writing of the Zarquawi book in the total amount of $97,707. Under the Contract, Miniter was not due another advance until Regnery accepted the manuscript for Book 2, but Miniter told Regnery he could not do the book unless he received the $97,707 up front. Regnery accepted the Zarquawi book proposal but ultimately decided it would not advance Miniter the $97,707 he said he needed to be able to write the book.

Miniter presented Regnery another proposal for a book he called *Where Have All the Heroes Gone?*, but Regnery did not believe this was a strong proposal, declined it, and informed Miniter it wanted him to do the Zarquawi book.

During the course of this interchange, Regnery received both direct and indirect indications from Miniter's agent and from sources in the industry that Miniter was disenchanted with Regnery and was interested in talking to other publishers in New York. The indications subsequently focused on Simon & Schuster. Regnery was willing to part company with Miniter but only on terms where the new publisher agreed to buy out its interest in its contract with Miniter, including recovery of a significant part of the advances paid Miniter which had not been earned. The number $83,333 emerged. Regnery negotiated an agreement with Simon & Schuster through Miniter's agent, but Miniter refused to sign it, claiming he never authorized the negotiation.[2]

---

[2] Throughout his dealings with Regnery, Miniter had placed his agent in a position of apparent authority to deal with Regnery, and Regnery was entitled to rely on that apparent authority.

Miniter then signed with Simon & Schuster, never produced a second book for Regnery under the Publishing Contract and refused to return the $83,333 in unearned advances Regnery had demanded. At the time of the hearing, Miniter was working on a book for Simon & Schuster and has produced another book for BenBella Books, Inc.

Regnery initiated this arbitration claiming breach of contract and unjust enrichment, demanding return of unearned advances, damages in the form of lost profits on the second book and the option book, interest, costs and attorneys' fees. Miniter answered and asserted counterclaims, which he withdrew shortly before the arbitration hearing.

## ANALYSIS

### Breach of Contract

Regnery claims that Miniter breached the Publishing Contract by failing to produce the required second book and that Regnery is therefore entitled to recover all of the unearned advances paid to Miniter. Regnery advanced Miniter a total of $263,333. The record shows royalties earned on *Disinformation* in the amount of $116,433.04, and Regnery thus claims the right to recover the $146,899.96 difference.

Miniter offers several arguments to counter Regnery's claim. For the most part these are not so much arguments against Miniter's having breached the contract as they are reasons Regnery should not be permitted to recover what it has claimed. Miniter focuses first on paragraph 9(e) of the Publishing Contract, which reads:

> In the event of a termination by either party under this paragraph, all rights conveyed hereunder shall revert to their grantor and the parties shall have no further claims upon each other except for obligations already incurred, and except that Author shall return all monies paid to him by Publisher for advances on royalties in the event of termination before publication due to breach of any of Author's warranties as set forth in this Agreement.

Miniter argues that paragraph 9(e) means that "Regnery may only seek a return of royalties advanced prior to publication" and that, inasmuch as the first book, *Disinformation*, was published, Regnery had no right to recover any of the advances paid under the terms of the Agreement.

As Regnery contends, paragraph 9(e) simply does not say what Miniter says it does and does not lead to his conclusion. Paragraph 9(e) pertains to a termination of the agreement by one of the parties under one of the four preceding provisions of Paragraph 9. There has not been a showing by either party here that the Publishing Contract was in fact terminated by either party for any of the reasons specified in Paragraph 9.

To the extent that Miniter points to the language in 9(e) concerning return to the Publisher of monies advanced on royalties before publication, that provision, on its face, pertains only where Publisher has terminated before publication due to breach of the Author's warranties. Those warranties are set out at Paragraph 5 of the Publishing

3

Contract. Regnery has never claimed that Miniter breached any of his warranties and never terminated the contract for breach of warranty. Paragraph 9(e) thus does not apply here and does not negate Regnery's right to recover advances where the Author has breached the Publishing Contract by failing to produce the second book under a two-book agreement.

Miniter next contends that in refusing to make the $97,000 advance he needed to write the Zarquawi book, Regnery prevented his performance of his contractual obligation to deliver a second book. He argues that Regnery "engineered" this situation in breach of its duty of good faith and fair dealing. While such a duty exists in every contract, Regnery did not breach the duty in this case so as to prevent Miniter from performing the contract.

Miniter proposed *Zarquawi* to Regnery, advocated for it, and got Regnery interested in the project. He later presented a budget for the project in the amount of $97,707 and informed Regnery that he could not do the book without getting that amount in advance, an advance not required by the Publishing Contract. Regnery was under no contractual obligation to modify the terms of its existing agreement to advance more money to Miniter, nor was it unfair or in bad faith for it to refuse to do so. Under the terms of the Contract, Miniter in effect already had at least $83,333 in advance money for the second book. I cannot say that Regnery acted in bad faith or unfairly in refusing to advance either an additional $97,707 or that amount from the advance that would have been due upon delivery of the manuscript for the second book. Had Regnery forwarded the $97,000 as Miniter demanded, this would have left Miniter with greatly reduced incentive to produce and deliver the manuscript for the second book on time and increased Regnery's risk that it would not recover its advances. Regnery was making reasonable business decisions concerning management of its risks. If Miniter spent all of the money he had received in advances for a two-book deal, Regnery's decision to hold to the existing contract terms is not what prevented Miniter from performing his obligations concerning the second book.

Finally, Miniter, in his Reply Brief, argues that Regnery effected a termination of the Agreement by demanding a second book that it knew Miniter could not deliver. Miniter offers no factual or legal support for the proposition that Regnery terminated the contract. Paragraphs 3.b and 9 of the Agreement prescribe the bases for cancellation or termination of the contract, and none of these apply to the case before us. In addition, where the contract provides for termination, it prescribes written demands or notices to effectuate the termination. There was no such writing here. Moreover, Miniter cites no legal authority outside the contract for his contention that Regnery's actions expressly or constructively terminated the Publishing Contract.

Neither party treated the contract as having been terminated when Miniter now says it was. See Ex. M-G and R-29. On the contrary, the evidence shows Regnery accepting the *Zarquawi* book for publication while sticking to the existing contract terms with respect to the matter of advances. See Ex. R-29. When it appeared that Miniter would not do the book for Regnery and wanted to go to another publisher, Regnery continued to press its

4

contractual rights in negotiating with Miniter's agent for a buy-out of its contract by the prospective new publisher. See, e.g. Ex. R-30.

I conclude that Miniter breached the Publishing Contract by failing to produce a second book for publication and that Regnery is entitled to recover damages resulting from the breach.

## Damages for Breach of Contract

The purpose of damages for breach of contract is to give the injured party the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contact been performed. *Vector Realty Group, Inc. v. 711 Fourteenth Street, Inc.,* 659 A.2d 230, 234 n. 8 (D.C. 1994) (quoting Restatement (Second) of Contracts § 347 comment a (1981). The proper measure of such damages "should be such as may fairly and reasonably be considered either arising naturally, *i.e.* according to the usual course of things from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it." *Fowler v. A&A Co.,* 262 A.2d 344, 349 (D.C. 1970), citing *Hadley v. Baxendale,* 9 Exch. 341 (1854).

Regnery seeks two distinct elements of damages: 1) return of the advance attributable to the second book, and 2) profits that Regnery could reasonably expect to have earned had Miniter delivered the second book. Regnery Post-Hearing Brief, at 7.

### Recovery of Unearned Advances

Regnery paid Miniter advances against royalties totaling $263,333. Miniter has earned royalties of at least $116,433.04 on Book 1 (*Disinformation*). The difference of $146,899.96 is the unearned royalties, which Regnery claims it is entitled to recover. Miniter contends Regnery is not entitled to recover any advances at all, but, as discussed above, we reject that argument.

The Publishing Contract assigned $180,000 of the total advance to Book 1. One position expressed through some of the negotiations and correspondence between the parties is that Miniter owed Regnery $83,333, the amount of advances paid him in excess of the $180,000 in advances assigned to Book 1 for purposes of royalty payments. This was the figure Regnery was willing to accept for purposes of settlement under the negotiated buy-out agreement which Miniter ultimately disavowed. Regnery is entitled to recover at least this amount. In effect, then, the issue becomes one of whether Regnery is now entitled also to recover the unearned part of the assumed $180,000 Book 1 advance, which is $63,567.

Looking to the Publishing Contract, paragraph 2.b "assumes" that $180,000 of the total advance will be assigned to Book 1 "for purposes of royalty payments." This meant to the parties that Miniter would start to receive payment of royalties on Book 1 after his

5

royalties earned exceeded $180,000. This assumption was apparently not based on any calculation that Miniter needed $180,000 to prepare the book, nor is there any evidence that it in fact cost him that much to deliver the manuscript for Book 1.

Paragraph 3.b of the Publishing Contract provides that if the Author fails to deliver complete and satisfactory manuscript of the Works, Publisher may notify Author of its intent to cancel the contract and, if Author still fails to deliver, "Author shall repay the Publisher *all sums previously paid to Author by the Publisher*. (Emphasis added.) Paragraph 9.b provides that in the event of the Author's breach of warranties, Publisher may terminate the contract and "Author shall *return all sums previously paid but unearned* to Publisher." (Emphasis added.) Paragraph 9.e provides that, in the event of a termination, "Author shall *return all monies paid to him by Publisher for advances on royalties* in the event of termination before publication due to breach of any of Author's warranties . . . .." (Emphasis added.) While none of these provisions applies strictly to what occurred here, paragraph 3.b is the most closely analogous and all three suggest that Author's failure to deliver the promised work entitles Publisher to recover all sums previously paid the Author and unearned to that point. This would certainly be the case in a one-book deal.

As Regnery emphasizes, however, this was a two-book deal and was structured as such to benefit Regnery by reducing its risk and providing it a broader base to recover its costs, including the advances. It is too simplistic to treat the Publishing Contract, as Miniter does, as, in effect, two separate one-book contracts with two separate advances with Miniter performing one of the contracts but not the other. That ignores the economic benefits Regnery bargained for in entering into a two (or even three) book deal. The Publishing Contract is properly treated as one contract which Miniter did not perform. He thus breached the Publishing Contract as a whole by failing to complete the performance for which Regnery bargained. I conclude that under these circumstances Regnery is entitled as a matter of contract to recover all sums previously paid Miniter as advances against royalties but unearned. On the hearing record, that amount is $146,899.96.[3]

        Lost Profits on Book 2

Regnery claims as additional damages lost profits on the undelivered second book in the amount of $167,055, which represents the average of the profits Regnery earned on the three books Miniter did produce for them. Miniter contends that the lost profits are speculative and thus unrecoverable in any amount.

Loss of profit is recoverable in damages where such damages are foreseeable and are proved with reasonable certainty. The parties knew that Miniter had produced two successful, profitable books for Regnery. It was reasonably foreseeable by the parties that if Miniter failed to produce one or both of the books required under the Publishing

---

[3] This does not mean that Miniter is no longer entitled to royalties earned in excess of $116,433.04 on sales of *Disinformation*.

Contract, Regnery would be deprived of the ability to earn profits on the sale of the books as expected. Regnery bargained for that benefit.

With respect to the amount of such damages, the law allows damages to be awarded on the basis of estimates made to a reasonable certainty. "The evidence offered must form an adequate basis for a reasoned judgment." *Vector Realty Group*, 659 A.2d at 234. The requirement of proof with reasonable certainty does not require mathematical precision. Of course, no one knows precisely what would have happened to Book 2 had Miniter produced it for Regnery, because that never happened. But that will always be the case where there has been a failure to perform, and Miniter, as the breaching party, must bear some responsibility if there is any a lack of exactness. Regnery has made a straightforward calculation based on relevant data, *i.e.* the actual profits Regnery earned on the three books already produced by the same author and sold by Regnery. Miniter has not shown any specific reason that this calculation is unreasonable under the circumstances, and I find Regnery's proof on this issue sufficient. Regnery is entitled to recover lost profits in the amount of $167,055.

That is not the end of it, however. There is a basic inconsistency between the two elements of Regnery's damage claim. As stated above, the purpose of damages is to place the injured party (Regnery) in the same position it would have enjoyed had Miniter performed the contract. The negative corollary to that principle is that the injured party should not be placed in a better position than it would have enjoyed had the breaching party performed.

When we look to award lost profits here, we are assuming that Miniter performed his obligations and produced Book 2, and that Regnery sold it at a profit. Had this occurred, however, Regnery would not have been in a position to recover the advances paid to Miniter, certainly not to the extent Regnery has claimed them here. Those advances would have been accounted for as direct costs of the book. See Ex. R-62. If Regnery were to recover both this substantial item of direct cost and its estimated lost profits, then Regnery would be placed into a substantially better position than it would have enjoyed had Miniter performed. The measure of how much better is the amount of cost recovered. It is necessary, therefore, to adjust the amount of damages to bring them into line with their legal purpose. I would offset the estimated lost profits on Book 2 ($167,055) by the amount of advances to be recovered ($146,899.96), resulting in a net award of lost profits of $20,155.04.

**Breach of Contract on the Option Book**

Regnery contends that Miniter also breached Paragraph 13 of the Publishing Contract when he edited a book of essays concerning the television series *24's* protagonist Jack Bauer which is being published by BenBella Books. Paragraph 13 provides in pertinent part:

> As part of the consideration paid to Author by Publisher hereunder, Publisher shall have the first opportunity to read and consider for publication the manuscript

7

or detailed outline of Author's next literary work suitable for publication in book form, and of acquiring the same rights on mutually agreed upon terms and conditions.

Miniter breached Paragraph 13 of the Publishing Contract. Clearly, he did not provide Regnery the opportunity to read and consider his next work, and, at least at some technical level, Regnery suffered injury in being denied this right. However, I cannot agree with Regnery that it is entitled to the same measure of lost profit damages ($167,500) for this book that it proved with respect to Book 2. In this instance, I find Regnery's estimate of damages is not reasonably certain or based on relevant data. The *Jack Bauer* book is entirely different from the others Miniter produced for Regnery. It is not investigative journalism, which is Miniter's forte. Miniter did not write the *Jack Bauer* book; he merely edited a collection of essays written by a number of other authors and wrote an introduction to the collection. This book is so different from the others in nature and in Miniter's role in producing it that, in my view, it becomes a matter of speculation as to 1) whether Regnery would have published it; 2) the financial terms the parties would have agreed upon; 3) how the book would have sold; and 4) how much profit Regnery would have earned. I find I cannot award lost profits on the basis advocated by Regnery and have no reasonable alternative of my own.

### Regnery's Withholding of Royalty Payments from Prior Contract

Miniter contends, and the evidence shows, that Regnery is withholding at least $16,545.47 in royalties Miniter has earned on two books under his 2003 contract with Regnery against monies Miniter owes Regnery under the 2005 Publishing Contract. Miniter is entitled to a set-off in that amount against any monies owed Regnery as a result of this Award.

### Dismissal of Counterclaims with Prejudice

During the course of this arbitration, Miniter sought to assert counterclaims against Regnery relating to certain marketing or sales practices related to all three of Miniter's books. For reasons stated in previous orders, I permitted only the counterclaims arising out of the 2005 Publishing Contract to proceed in this case.

On January 4, 2008, ten days before the scheduled commencement of the hearing and the same date that the parties were to exchange witness lists and exhibits, Miniter withdrew his counterclaims "without prejudice to pursuing claims against respondent involving an alleged diversion of book sales under the 2005 contract in a separate proceeding in consolidation with related claims under Miniter's 2003 contract and under the contracts of similarly-situated Regnery authors . . . ." Shortly thereafter, Regnery filed a motion requesting that the dismissal of counterclaims be declared to be with prejudice, which Miniter opposed. The motion has not been ruled upon.

Regnery maintains that the dismissal should be ruled to be with prejudice, but, if not so held, then Regnery should be awarded the attorney's fees associated with defense of the dismissed counterclaims. Regnery submits a statement of, and back-up for, such fees in the amount of $15,875.55.

8

As I believe I indicated at the hearing, but did not then rule, I am not inclined to hold that Miniter's voluntary dismissal of his counterclaims is with prejudice. The AAA Rules do not provide for such a result. Federal and D.C. Rules of Civil Procedure would permit it but certainly do not require it and even suggest that it would not be the usual result. ("Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice." Rule 41(a)(2), Fed. R. Civ. P.) In any event, there has been no wholesale importation of either set of Civil Rules into this proceeding.

Miniter and his counsel have tried throughout the proceeding to consolidate the dismissed counterclaims under the 2005 contract with claims by Miniter under an earlier contract and with similar claims by several other authors. While I express no view whatsoever as to the merits of those claims, I think it is fair to Miniter, and not demonstrably unfair to Regnery, to permit him to do that, if he so chooses.

The question of attorney's fees and costs associated with defense of the counterclaims in this case is, in my view, essentially a question, first, of the Arbitrator's authority, and, second, of whether the withdrawing party, Miniter, has caused Regnery to incur expenditures it will have to incur again, if and when the withdrawn claims are reinstituted.

Regnery does not point to a source of authority in the contract or extrinsic law for the arbitrator to award attorney's fees in this case. Secondarily, I note that a substantial portion of the attorney's fees Regnery claims relates to evaluating and opposing the counterclaims that Miniter and his counsel sought to bring but which were disallowed and, therefore, were not part of the voluntary withdrawal. I think it is also probably fair to say that if Miniter does refile the claims, most of Counsel's efforts in this case, for which Regnery presumably has paid, will not have been wasted. If as a result of the withdrawal of the counterclaims some part of Counsel's effort proves to have been unnecessary, that amount is presently indeterminate. The request to assess attorney's fees related to the withdrawn counterclaims is denied.

## Conclusion

Regnery is entitled to recover from Miniter unearned advances of $146,899.96, plus net lost profits of $20,155.04, less $16,545.47 in unpaid royalties held by Regnery under the 2003 contract, for a total of $150,509.53.

ACCORDINGLY, the Arbitrator AWARDS as follows:

1. Respondent Richard Miniter shall pay Claimant Regnery Publishing, Inc. the sum of $150,509.53, together with interest at the legal rate permitted under District of Columbia law from the date of this Award.

2. To the extent that Miniter has earned or earns royalties in excess of $116,433.04 on sales of the book *Disinformation* under the 2005 Publishing Contract, Regnery owes those royalties to Miniter and shall provide royalty statements to Miniter showing the amounts earned; provided, however, that Regnery may withhold payment of those royalties to Miniter as an offset, until such time as it has been paid the amounts awarded Regnery in this Award.

9

3.  The administrative fees and expenses of the American Arbitration Association totaling $5,250.00 shall be borne Thirty percent (30%) by Regnery and Seventy percent (70%) by Miniter. The compensation and expenses of the arbitrator totaling $12,437.50 shall be borne Thirty percent (30%) by Regnery and Seventy percent (70%) by Miniter. Therefore, Miniter shall reimburse Regnery the sum of $8,918.75, representing the fees and expenses previously incurred by Regnery.

4.  The above sums are to be paid on or before 30 days from the date of this Award.

5.  Respondent's counterclaims withdrawn prior to the hearing are deemed withdrawn without prejudice.

6.  This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby, DENIED.

7.  This Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.


_March 10, 2008_
Date

John R. Keys, Jr.


I, John R. Keys, Jr., do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.


_March 10, 2008_
Date

John R. Keys, Jr.


10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REGNERY PUBLISHING, INC.,

              Petitioner,

vs.

RICHARD MINITER,

              Respondent.

CASE NO.:

## DECLARATION AUTHENTICATING AWARD OF ARBITRATOR

Mark I. Bailen declares as follows:

1.      I am a partner with the law firm of Baker & Hostetler LLP, 1050 Connecticut Avenue, N.W., Suite 1100, Washington, D.C. 20036.  I served as counsel of record for Petitioner Regnery Publishing, Inc. ("Regnery") in an arbitration proceeding between Regnery and Richard Miniter ("Miniter"), identified as *In the Matter of Arbitration between Regnery Publishing, Inc. and Richard Miniter*, AAA Docket No. 16 143 00290 07.

2.      Exhibit B to Regnery's Petition to Confirm Arbitration Award is a true and correct copy of the Award of Arbitrator ("Award") issued by Arbitrator John R. Keys, Jr. on March 10, 2008 in *In the Matter of Arbitration between Regnery Publishing, Inc. and Richard Miniter*, AAA Docket No. 16 143 00290 07.

3.      I received the Award from the American Arbitration Association via email on March 10, 2008 at the offices of Baker & Hostetler LLP, 1050 Connecticut Avenue, N.W., Suite 1100, Washington, D.C. 20036, and by certified mail thereafter.

I certify under penalty of perjury that the foregoing is true and correct.  Executed this 25th day of April, 2008.

Mark I. Bailen (459623)
Baker & Hostetler, LLP
1050 Connecticut Avenue, N.W.
Suite 1100
Washington, D.C. 20036
Tel: (202) 861-1500
Fax: (202) 861-1783
Email: *mbailen@bakerlaw.com*

*Attorney for Petitioner*

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REGNERY PUBLISHING, INC.,

                Petitioner,

vs.

                                        CASE NO.:

RICHARD MINITER,

                Respondent.

## ORDER GRANTING PETITION TO CONFIRM ARBITRATION AWARD

Upon consideration of Petitioner Regnery Publishing, Inc.'s Petition to Confirm Arbitration Award regarding the March 10, 2008 award in *In the Matter of Arbitration between Regnery Publishing, Inc. and Richard Miniter*, AAA Docket No. 16 143 00290 07, it is on this _____ day of _____, 2008,

**ORDERED** that the petition is hereby granted, and the March 10, 2008 arbitration award is confirmed; and

**ORDERED** that the Clerk shall enter a judgment against Respondent Richard Miniter in the amount of $159,428.28, together with interest at the legal rate permitted under District of Columbia law from the date of the Award, plus the costs of this action.

_____
U.S. District Court Judge

Copies to:

Mark I. Bailen
Baker & Hostetler, LLP
1050 Connecticut Avenue, N.W.
Suite 1100
Washington, D.C. 20036
(202) 861-1500

*Attorney for Petitioner, Regnery Publishing, Inc.*

John M. Shoreman
McFadden & Shoreman, LLC
1420 New York Avenue, N.W.
Suite 700
Washington, D.C. 20005
(202) 638-2100

*Attorney for Respondent, Richard Miniter*

08-709
EGS

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Regnery Publishing, Inc.   11001 | Richard Miniter |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   D.C.
(EXCEPT IN U.S. PLAINTIFF CASES)   11101

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   Arlington, VA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Mark I. Bailen
Baker & Hostetler LLP
1050 Connecticut Avenue, N.W.
Suite 1100
Washington, D.C. 20036
(202) 861-1500

Case: 1:08-cv-00709
Assigned To : Sullivan, Emmet G.
Assign. Date : 4/25/2008
Description: General Civil

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
◉ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ◉ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ◉ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**
☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

◉ **E. General Civil (Other)**   OR   ○ **F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

9 U.S.C. § 9 Petition to Confirm Arbitration Award

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐ | **DEMAND $** 159,428.53 plus interest and costs. Check YES only if demanded in complaint<br>**JURY DEMAND:**   YES ☐   NO ☒ |
|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐   NO ☒    If yes, please complete related case form.

DATE April 24, 2008     SIGNATURE OF ATTORNEY OF RECORD _[signature]_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

    **I.**      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

    **III.**    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

    **IV.**    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

    **VI.**    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

    **VIII.**   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.