## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

REGNERY PUBLISHING, INC., )
    Petitioner, )
          )
v. )  Case No. 1:08-cv-00709 (EGS)
          )
RICHARD MINITER, )
    Respondent. )
_____ )

### <u>RESPONDENT'S MOTION TO VACATE</u>

  COMES NOW, Respondent Richard Miniter, by counsel, and moves to vacate the arbitration award entered in favor of Petitioner Regnery Publishing, Inc. on March 10, 2008.  This Motion is filed in Opposition to Petitioner's Motion to Confirm the Arbitration Award.

  1. As more fully discussed in the attached Memorandum of Law, vacatur of the arbitration award is warranted on statutory and common law grounds.

  WHEREFORE, Respondent respectfully requests entry of an Order vacating the Arbitration Award.

        Respectfully submitted,


        /s/ John M. Shoreman

        _____
        John M. Shoreman (407626)
        McFadden & Shoreman
        1420 New York Ave., NW
        7th Floor
        Washington, D.C.  20005
        (202) 638-2100
        fax (202) 628-0735

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

REGNERY PUBLISHING, INC.,   )
      Petitioner,   )
            )
v.             )  Case No. 1:08-cv-00709 (EGS)
            )
RICHARD MINITER,     )
      Respondent.   )
_____)

## MEMORANDUM OF LAW IN SUPPORT
## OF RESPONDENT'S MOTION TO VACATE

COMES NOW, Respondent Richard Miniter, by counsel and pursuant to the

Federal Arbitration Act ("FAA") (9 U.S.C. § 1, *et seq.*), moves to vacate the arbitration

award (the "Award") entered on March 10, 2008.  In support thereof the following is

respectfully shown.

## **INTRODUCTION**

Petitioner Regnery Publishing, Inc. ("Regnery") and Miniter arbitrated a dispute

over Miniter's alleged breach of a two-book publishing contract dated February 14, 2005.

Regnery successfully published Miniter's first book under the title *Disinformation*.  The

parties did not consider the subject matter of the second book in the two-book deal when

they entered into the contract.  No requirements for the second book were written into the

contract.

Miniter received advance royalties of $238,333 prior to publication of

*Disinformation* pursuant to the contract.  An additional $116,667 in advanced royalties

was to be paid upon Regnery's acceptance of a manuscript for the second book.  For

purposes of royalty payments, the contract provided that $180,000 of the total amount

advanced was assigned to the first book and $175,000 to the second.  Miniter also

2

received an advance of $25,000 against royalties on *Disinformation* under a separate agreement entered into in June 2005. Regnery did not allege a breach of the $25,000 agreement in the underlying arbitration, though the arbitrator included that figure in calculating damages against Miniter.

Miniter proposed a second book with the working title *Hunting Zarqawi*, which would have been based on interviews with the notorious terrorist's family and friends in the Middle East. Miniter could not personally finance the budget of $96,206.99 needed to research and write *Hunting Zarqawi*. Since Regnery refused to advance this amount against the $116,667 it was obligated to pay upon acceptance of the manuscript, Miniter proposed another, less expensive, book tentatively titled *Where Have All The Heroes Gone?* Regnery rejected this second proposal and insisted Miniter proceed with *Hunting Zarqawi*, even though it knew Miniter was financially unable to do so.

The Arbitrator ruled that Regnery was entitled to recover from Miniter unearned royalties of $146,899.96 (even though earned royalties from sales of *Disinformation* continue to accumulate), plus lost profits of $20,155.04. The Award must be vacated under Section 10(a) of the FAA and on common law grounds.

(1)    Statutory Grounds

The FAA provides that an arbitration award may be vacated:

(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

The Arbitrator ignored a Motion to Recuse filed by Miniter prior to the arbitration hearing.  On October 26, 2007, in the course of arbitration proceedings, Miniter filed a motion with the Arbitrator to recuse himself from the proceedings due to improper communications with the American Arbitration Association ("AAA"), which administered the arbitration. (Exhibit 1).  An AAA administrator had informed the Arbitrator, in the absence of the parties, that Miniter was delinquent in paying the Arbitrator's fee and inquired whether the Arbitrator would dismiss certain counterclaims filed by Miniter. *Id*.  Miniter also asked the AAA to disqualify the Arbitrator by separate letter, pursuant to AAA's rules. *Id*.  The arbitration terminated upon entry of an Award without a ruling from the Arbitrator on Miniter's Motion to Recuse. The Motion to Recuse raised a serious conflict of interest that should have been addressed by the Arbitrator.  What Miniter considered an "intolerable appearance of prejudice and partiality" was simply ignored.  The AAA's refusal to disqualify the Arbitrator did not settle the matter.

The Arbitrator's failure to rule on the Motion to Recuse tainted the arbitration with more than a mere appearance of partiality.  The AAA advised the Arbitrator that Miniter was delinquent in paying a deposit against the Arbitrator's compensation, and suggested he dismiss Miniter's pending claims.  Failing to address the Motion to Recuse leaves the question of a conflict of interest unresolved.  Public support for a strong federal policy favoring arbitration will wane if issues of conflict of interest and partiality

are not addressed and resolved by an Arbitrator when properly raised within an arbitration proceeding. Accordingly, the Award must be vacated under 9 U.S.C. § 10(a) (2) and (4). A question of partiality was left unresolved by the Arbitrator's inaction. Failure to resolve the Motion to Recuse may properly be considered misbehavior that prejudiced Miniter's rights.

(2)    <u>Common Law Grounds</u>

An award may be vacated if it is in manifest disregard of the law, fails to draw its essence from the contract or is contrary to public policy. *Lessin v. Merrill Lynch*, 481 F.3d 813, 816 (D.C. Cir. 2007); *Patten v. Signator Ins. Agency*, 441 F.3d 230, 234 (4th Cir. 2006). An arbitrator's authority, while broad, is not unlimited. *Mo. River Serv., Inc. v. Omaha Tribe of Neb.*, 267 F.3d 848, 855 (8th Cir. 2001); *Patten*, at 235. A manifest disregard of the law is established where an arbitrator understands the applicable law, but proceeds to disregard it.[1] *Id.*, at 235. An arbitration award fails to draw its essence from the agreement when the result is not "rationally inferable from the contract." *Id*.

In this case the Arbitrator revised the parties' governing contract based on his own personal notions of right and wrong and exceeded the scope of his authority. First, the Award included $25,000 in damages for breach of an agreement that Regnery did not claim was breached. The Arbitrator had no authority to consider such damages because they fall outside the scope of the agreement of February 14, 2005. Second, contrary to the evidence, the Arbitrator found that under the terms of the Agreement Miniter was compelled to research and write *Hunting Zarqawi* even though it is uncontested that it was impossible for him to do so because of the expense involved. The Arbitrator found

---

[1]  Miniter's post-hearing briefs show the fact that the Arbitrator was aware of the applicable law. (Exhibit 2).

that the Agreement granted Regnery the right to force Miniter to perform an impossibility

or hold him in breach for failing to do so.  This is an obvious substitution of the

Arbitrator's own notion of right and wrong for the language of the Agreement.  Third, the

recovery of advanced but unearned royalties paid to Miniter for *Disinformation* fails to

draw its essence from the Agreement.  Various provisions of the Agreement provide that

unearned royalties are not recoverable once a book is published.  Royalties on book sales

are earned over an indefinite period.  Regnery received the benefit of its bargain on the

advanced royalties once *Disinformation* was published.  There is no rational that can be

drawn from the Agreement whereby royalties paid to Miniter for *Disinformation* are

recoverable due to his failure to provide a second book.  The Arbitrator's analysis that

Regnery breached the "contract as a whole" by failing to deliver a second book finds no

rationale in the Agreement and constitutes a manifest disregard of the law. And, fourth,

the award for lost profits on a second book is so widely speculative as to be fanciful. As

pointed out to the Arbitrator, an award of lost profits must be premised on a finding that

the parties contemplated liability for lost profits at the time the contract was made. *See

Watson v. Telecommunications, Inc.*, 2000 U.S. Dist. LEXIS 1055, *10 (D.D.C. 2000).

The Arbitrator chose to ignore this element in finding Miniter liable for

lost profits.  Accordingly, the Award must be vacated.

Respectfully submitted,

/s/ John M. Shoreman

_____

John M. Shoreman (407626)
McFadden & Shoreman
1420 New York Ave., NW
7th Floor
Washington, D.C.  20005
(202) 638-2100
fax (202) 628-0735

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was served via ECF on the following counsel of record this 21st day of May, 2008:

Mark I. Bailen, Esq.
Baker & Hostetler LLP
1050 Connecticut Avenue, N.W.
Suite 1100
Washington, D.C.  20036

/s/ John M. Shoreman

_____

 **American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Southeast Case Management Center*
John M. Bishop
Vice President
Linda Beyea
Assistant Vice President

October 26, 2007

2200 Century Parkway, Suite 300, Atlanta, GA 30345
telephone: 404-325-0101 facsimile: 404-325-8034
internet: http://www.adr.org/

VIA FACSIMILE

Mark I. Bailen
Baker & Hostetler LLP
1050 Connecticut Avenue, N.W.
Suite 1100
Washington, DC 20036

John M. Shoreman, Esq.
McFadden & Shoreman, L.L.C.
1420 New York Avenue, N.W., 7th Floor
Washington, DC 20005

Re: 16 143 00290 07
    Regnery Publishing, Inc.
    and
    Richard Miniter

Dear Parties:

This will acknowledge receipt of a letter dated October 26, 2007, from Respondent, a copy of which was copied to the Claimant via e-mail.

At this time we request the comments of with respect to letter. Said comments are to be received by the Association **on or before October 30, 2007**.

You may also share and manage correspondence through AAA's WebFile. The Case Manager will determine who should receive viewing privileges and grant access accordingly.

Sincerely,

*/s/ Mark Just*

Mark Just
Case Manager
866 743 4446
JustM@adr.org

*Supervisor Information: Rebecca M. Rau, 866 888 5293, rau@adr.org*

cc:    John R. Keys, Jr., Esq.

**AMERICAN ARBITRATION ASSOCIATION**
Washington, D.C.

| | | |
|---|---|---|
| **Regnery Publishing, Inc.,** | ) | |
| Claimant, | ) | |
| | ) | |
| v. | ) | Claim No. 16 459 00290 07 |
| | ) | |
| **Richard Miniter,** | ) | |
| Respondent. | ) | |
| | ) | |

## <u>RESPONDENT'S MOTION TO RECUSE</u>

COMES NOW, Respondent Richard Miniter, by counsel, and moves the

Arbitrator to recuse himself from further participation in this proceeding pursuant to

AAA R-17. In support whereof, the following is shown.

1.       An appearance of prejudice and partiality arises from correspondence

received from the AAA Administrator on October 16, 2007 (Exhibit 1). Without the

parties present, the AAA Administrator advised the Arbitrator that Miniter was

delinquent in submitting the Arbitrator's fee deposit and apparently requested dismissal

of Miniter's claim (Exhibit 1). While the Arbitrator demurred, the fact that he was

advised that Miniter was delinquent, and also the fact that an AAA Administrator

requested him to dismiss Miniter's claim on the basis of delinquency, raises an

intolerable appearance of prejudice and partiality against Miniter.

2.       Any award issued under such circumstances would be subject to a motion

to vacate under Section 10(a)(2) and (3) of the Federal Arbitration Act (9 U.S.C. § 10) or

Section 16(a) of the District of Columbia Arbitration Act (D.C. Code § 16-4311). The

process in this case has been corrupted by the AAA's violation its own procedures for

avoiding the appearance of prejudice and partiality. A written request for disqualification

pursuant to R-17 has been forwarded to the AAA simultaneous with this filing (Exhibit 2).

WHEREFORE, Respondent requests the Arbitrator to recuse himself from further participation in this proceeding.

Respectfully submitted,

/s/ John M. Shoreman

_____

John M. Shoreman
McFadden & Shoreman
1420 New York Avenue, NW
Washington, D.C.  20005
(202) 638-2100

*Attorneys for Respondent*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion to Recuse has been served upon the following counsel of record and filed with the American Arbitration Association via e-mail transmission.

Mark I. Bailen, Esq.
Baker & Hostetler LLP
1050 Connecticut Avenue, NW
Suite 1100
Washington, D.C.  20036

/s/ John M. Shoreman

_____

John M. Shoreman

**EXHIBIT 1**

## John Shoreman

| | |
|---|---|
| **From:** | "Mark Just" <Justm@adr.org> |
| **To:** | <mbailen@bakerlaw.com>; <mstlaw@erols.com> |
| **Sent:** | Tuesday, October 16, 2007 11:32 AM |
| **Subject:** | Regnery v. Miniter |

Dear Parties,

This will confirm a conversation with Mr. Keys.

The arbitrator does not believe that he has the power to dismiss a claim for non payment.

Mr. Shoreman at this time I have been instructed to advise the non-paying party (Miniter) that they have until October 29, 2007 to submit the fees.

If Regenery chooses to pay for Miniter that fee would also be due on or before October 29, 2007.

*Mark Just*

**Mark Just**
**Case Manager**
**American Arbitration Association**
**Southeast Case Management Center**
**866-888-5291**
**Fax: 404-325-8034**

**EXHIBIT 2**

# McFadden & Shoreman, L.L.C.

### ATTORNEYS AT LAW

1420 New York Avenue, N.W.
Suite 700
Washington, DC 20005-2122
Telephone (202) 638-2100
Telecopier (202) 628-0735

DOUGLAS B. McFADDEN*
JOHN M. SHOREMAN**

*ALSO ADMITTED IN NEW YORK, INDIANA
**ALSO ADMITTED IN NEW YORK

October 26, 2007

### VIA FAX TRANSMISSION & REGULAR MAIL

Mr. Chauncey B. Davis
Vice President
American Arbitration Association
2200 Century Parkway, Suite 300
Atlanta, GA.  30345

Re:    16 143 00290 07
        Regnery Publishing, Inc. and Richard Miniter

Dear Mr. Davis:

For the reasons set forth in the attached Motion to Recuse, Respondent Richard Miniter requests the AAA to disqualify the Arbitrator in the above-referenced proceeding pursuant to Rule 17 of the AAA's Commercial Rules.  Through no fault of the Arbitrator's, there exists an appearance of prejudice and partiality due to communications from the AAA Administrator regarding a delinquency in Miniter's payment of the Arbitrator's fee deposit and the possibility of dismissing his counterclaim as a result.

The mere appearance of prejudice and partiality is unacceptable to my client, and would serve as the basis to vacate any adverse award under Section 10(a)(2) and (3) of the Federal Arbitration Act (9 U.S.C. § 10) or Section 16(a) of the District of Columbia Arbitration Act (D.C. Code § 16-4311).  Accordingly, Miniter respectfully requests the AAA to disqualify the current Arbitrator and suspend all procedural dates pending the parties' selection of a replacement.

Yours truly,

John M. Shoreman

cc:    John R. Keys, Jr., Esq.
        Mark I. Bailen, Esq.
        Mark Just

## AMERICAN ARBITRATION ASSOCIATION
### Washington, D.C.

| | | |
|---|---|---|
| **Regnery Publishing, Inc.,** | ) | |
| Claimant, | ) | |
| | ) | |
| v. | ) | Claim No. 16 459 00290 07 |
| | ) | |
| **Richard Miniter,** | ) | |
| Respondent. | ) | |
| | ) | |

## RESPONDENT'S POST-HEARING BRIEF

Respondent Richard Miniter, by counsel, submits the following post-hearing brief and requests the Arbitrator to enter a final order denying Claimant's demand for $495,399.96 in damages.

## STATEMENT OF FACTS

Regnery Publishing, Inc. ("Regnery") is seeking an extraordinary damage award for Miniter's alleged breach of a two-book publishing agreement (the "Agreement") dated February 14, 2005 (Exhibit 1). Miniter is an investigative journalist with a background in international and national security affairs. Regnery published two earlier books by Miniter, *Losing Bin Laden* and *Shadow War*, both of which became best sellers. Based on the success of his earlier works, and on the strength of Miniter's proposal for a new book entitled *Disinformation*, Regnery entered into the Agreement. The subject matter of the second book in the two-book deal was not considered when the parties entered into the Agreement, and no requirements for the second book were written into the Agreement. Miniter was given an advance against future royalties under the Agreement:

> Publisher shall pay Author an advance against all royalty income in the amount of $355,000: $121,666 of which will be paid upon the signing of this agreement; $116,667 upon Publisher's final acceptance of the manuscript for the first book;

and $116,667 upon Publisher's final acceptance of the manuscript for the second book. For purposes of royalty payments it will be assumed that $180,000 of the total advance will be assigned to the first book, and $175,000 will be assigned to the second book.

(Exhibit 1, at 2(b)). The parties later entered a separate agreement relating to publicity expenses prior to publication of *Disinformation* (the "Publicity Expense Agreement") (Exhibit 2). This provided that Miniter would receive an additional $25,000 to cover expenses for a trip to Afghanistan (Exhibit 2). In the event CBS's "60 Minutes" aired a segment on Miniter's trip, Regnery agreed that the $25,000 would be treated as a marketing expense of the publisher. In the event it was not, $25,000 would be considered an additional advance against royalties. The Publicity Expense Agreement, by its terms, is specific to royalties advanced for *Disinformation*. Regnery attributed $180,000 to *Disinformation* for purposes of royalty payments under the Agreement. Accordingly, the amount of royalty payments attributable to *Disinformation* rose to $205,000 when CBS chose not to air the segment. Regnery is not claiming a breach of the Publicity Expense Agreement in recognition of the fact that it still recaptures royalties advanced to Miniter through continuing sales of *Disinformation*.

*Disinformation* was published in September 2005. Miniter was dissatisfied with Regnery's marketing efforts. The Agreement required Regnery to prepare a written marketing plan prior to publication (Exhibit 1, at 7(c)). But, since no marketing plan was prepared by Regnery, Miniter was compelled to hire a marketing consultant at his own expense to advise Regnery. The consultant created a written marketing proposal and presented it to Regnery. Regnery was offended by the consultant's offer of advice and her proposal was rejected. Regnery contends that it was Miniter who was uncooperative in efforts to promote *Disinformation*. The extent of Miniter's efforts to

promote *Disinformation* is established by the fact he actually delayed cancer surgery for three months after publication to devote himself to marketing the book. The parties' disagreements over promotion and marketing reflect a growing animosity between Regnery and Miniter. Another factor contributing to the deteriorating relationship was Regnery's failure to provide weekly Bookscan sales reports, as required under the Agreement (Exhibit 1, at 7(d)).

The second manuscript under the Agreement was due by June 15, 2006. Miniter made a proposal to write a book entitled *Hunting Zarqawi* (Exhibit B). The work would be based on interviews with the terrorist's family and childhood friends in Jordan (Exhibit B). Regnery's Acquisition Committee considered the proposal on January 24, 2006. Regnery's initial reaction to the proposal was skeptical and negative. Miniter was "grilled" by the Acquisition Committee and given the definite impression that Regnery was not interested in *Zarqawi* (Exhibit 29). In a follow-up meeting on January 31, 2006, Marjory Ross, Regnery's President, and Jeff Carneal, President of Eagle Publishing, Inc., met with Miniter to discuss a budget proposal for *Zarqawi* (Exhibit C). Miniter's detailed budget anticipated expenses of $96,206.99 to prepare the manuscript (*Id.*). The Agreement required Regnery to pay Miniter $116,000 upon delivery of a manuscript (Exhibit C). Since Miniter could not afford the expense involved in writing *Zarqawi,* it was essential that Regnery advance the final payment under the Agreement if it were to be written. Miniter could not possibly write and deliver *Zarqawi* unless financial arrangements with Regnery were modified. Ms. Ross admits she discussed paying the advance in chapter-by-chapter installments with Mel Berger, Miniter's agent, as a way of financing *Zarqawi*. Ultimately, Mr.

Carneal decided that funds would not be advanced. Since Regnery knew that Miniter was unable to write *Zarqawi* without the advance, Mr. Carneal's decision was in effect a rejection of the book.

Miniter submitted a second book proposal to Regnery when it became apparent he would be unable to write *Zarqawi*. This proposal was tentatively entitled *Where Have All The Heroes Gone?* (Exhibit D). This book could be completed and delivered on a far more modest budget than *Zarqawi* (Exhibit E). Regnery rejected the proposal out of hand. On March 22, 2006, Mr. Berger sent a letter to Ms. Ross that read, in part:

> You have told me you are not interested in either of the two books proposed to you – Zarqawi, or Heroes - and, in fact, you were no longer interested in publishing Richard Miniter at all, and that I should take him to meet other publishers, which I am now doing.

(Exhibit G). Ms. Ross replied on March 30, 2006, that Regnery did not technically reject *Zarqawi*, but would make no advance to have it written and believed further that Miniter would be happier with another publisher (Exhibit 29). Later, and without the knowledge or consent of Miniter, Mr. Berger and Regnery exchanged terms of a proposed "buy-out" of Regnery's rights to a second book.

It was suggested that Miniter's next publisher pay a total of $83,333 to Regnery (Exhibit 31). This figure was arrived at by Regnery by subtracting $180,000 (the amount of royalties attributed to *Disinformation*) from $283,333 (the total advanced to Miniter); Regnery then added $25,000 from the Publicity Expense Agreement (Exhibit 31). This results in a supposed restitution to Regnery in the amount of $83,333 (*Id.*). There is no indication in the record that Miniter at any time agreed to this proposal. In fact, it is clear that it was rejected (Exhibits F and J). Correspondence establishes that Miniter was overseas during much of the time these terms were being discussed between Regnery and Mr. Berger

(Exhibit I). It has not been shown that Mr. Berger represented to Regnery that he had the authority to bind Miniter to these terms. Correspondence between Miniter and Mr. Berger actually shows Miniter was reluctant to even consider the proposal when it was finally presented to him on May 15, 2006 (Exhibit H). And, it is clear that Miniter rejected the very concept of repaying advances that were paid for *Disinformation* and could be recaptured by Regnery through sales of the book.

Rather than restitution for royalties supposedly advanced on an unspecified second book, Regnery now demands the return of *all* monies advanced to Miniter minus royalties earned through the last royalty reporting period ($146,899.04), plus $167,000 in lost profits on the second book, and plus another $167,000 on grounds that Miniter did not submit an editorial piece to Regnery under an option clause in the Agreement covering "literary works" (Exhibit O). Regnery admits that *Disinformation* is still selling and will continue to earn royalties in the future. Regnery also admits that it probably would not have published the editorial piece entitled *Jack Bauer for President: Terrorism and Politics in 24.* It argues, nevertheless, that had Miniter written another book, and had he then failed to offer Regnery an option on that book, then Regnery could conceivably have lost future profits of $167,000 (Exhibits 61 and 104). Miniter wrote a 1,000 word introduction for *Jack Bauer for President: Terrorism and Politics in 24* and edited the work of 24 other writers who are under contract to a publisher in Dallas (Exhibit O). He was paid $1,000 (Id.).

## **ARGUMENT**

(1)    Relief is Limited by Terms of the Agreement

The Agreement clearly restricts the right of Regnery to recapture royalties paid in advance:

> In the event of a termination by either party under this paragraph, all rights conveyed hereunder shall revert to their grantor and the parties shall have no further claims upon each other except for obligations already incurred, and except that Author shall return all monies paid to him by Publisher for advances on royalties in the event of termination before publication due to breach of any of the Author's warranties as set forth in this Agreement.

Agreement, at ¶ 9(e). Regnery may only seek a return of advanced royalties prior to publication. The publication of *Disinformation* following payment of the advance of royalties by Regnery cut-off all rights to restitution according to the clear and unambiguous terms of the Agreement. D.C. adheres to an "objective" law of contracts, meaning that "the written language embodying the terms of an agreement will govern the rights and liabilities of the parties . . . unless the written language is not susceptible of a clear and definite undertaking . . ." *DSP Venture Group, Inc. v. Allen*, 830 A.2d 850, 852 (D.C. 2003). It is the written language embodying the terms of an agreement governs the rights and liabilities of the parties. *Meshal v. Ohev Sholom Talmud Torah*, 869 A.2d 343, 361 (D.C. 2005); *see also, NRM Corp. v. Hercules, Inc.*, 758 F.2d 676, 681-82 (D.C. Cir. 1985)(holding that "[w]here the language of a contract is clear and unambiguous on its face, a court will assume that the meaning ordinarily ascribed to those words reflects the intentions of the parties"). Ms. Ross testified that Regnery drafted the termination clause and uses it in other contracts. Accordingly, its terms must be construed against Regnery. *Kass v. William Norwitz Co.*, 509 F. Supp. 618, 624 (D.D.C. 2000).

Though limited by the Agreement's terms, Regnery still seeks wildly speculative expectation damages in the form of lost profits. Regnery barely attempts to justify its assumption that a future, non-conceived, work of Miniter's would sell based on an average of past books. Regnery's damages model is pure speculation and guesswork with no basis whatsoever in grounded fact. Damages for lost profits may not be awarded where the award

would be based on an estimate of lost profits that is speculative. *See* RESTATEMENT

(SECOND) OF CONTRACTS § 352 (1979); *Country Club Assoc. L.P. v. F.D.I.C.,* 918 F.

Supp. 429, 436 (D.D.C. 1996). "Damages may not be based on mere speculation or

guesswork. The evidence offered must form an adequate basis for a reasoned judgment."

*VectorRealty Group, Inc. v. 711 14th St., Inc.,* 659 A.2d 230, 234 (D.C. 1994). There is no

basis for a reasoned judgment of future lost profits based on the analysis presented.

Accordingly, no award of future lost profits is available to Regnery.

(2)    Regnery Prevented Publication of a Second Book

Regnery rejected the *Heroes* proposal and insisted Miniter deliver *Zarqawi*, which it

knew he could not write because of the costs involved. It thus intentionally frustrated and

prevented Miniter from performing under the Agreement by delivering a second book. "If

the party to a contract evades the spirit of the contract, willfully renders imperfect

performance, or interferes with performance by the other party, he or she may be liable for

breach of the implied covenant of good faith and fair dealing." *Paul v. Howard Univ.,* 754

A.2d 297, 310 (D.C. 2000). RESTATEMENT (SECOND) OF CONTRACTS § 205

(1979)("Every contract imposes upon each party a duty of good faith and fair dealing in

performance and its enforcement."); *Willens & Niederman v. 2720 Wisconsin Ave. Coop.*

*Ass'n,* 844 A.2d 1126, 1135 (D.C. 2004). "When the performance of one promise is an

express or constructive condition of the duty to perform a return promise, there is obvious

injury and a legal wrong if the promisor prevents the happening of the condition on which his

duty to perform is made dependent." *Boomhower, Inc. v. Lavine,* 151 F. Supp. 563, 568

(D.D.C. 1957).

Regnery breached the covenant of good faith and fair dealing by deliberately engineering a situation in which Miniter could not perform. Regnery wanted to terminate its relationship with Miniter because, in their opinion, he was difficult to work with; but it needed to do so in such a way that it might "claw back" advance royalties paid to Miniter at the signing of the Agreement, which were otherwise unavailable to Regnery due to the Agreement's termination clause, *supra*. Regnery's act of bad faith terminated the Agreement and extinguished any obligation owed by Miniter.

(2)    Set Off

There is no dispute that Miniter is owed earned royalties from sales of two books under the publishing agreement of 2003 (Exhibit A). Royalty statements for the periods January-June, 2006, and January-June, 2007, show that at least $16,445.47 is due Miniter at this juncture (Exhibits K and L). Additional royalty statements are in Regnery's possession and it has been represented that they will be entered into the record to establish the actual amount of money that is being withheld by Regnery on the basis of its claim for breach of the Agreement (Exhibit K).

## CONCLUSION

For the reasons stated above, Miniter requests a final order dismissing Regnery's claims in their entirety.

Dated: 2/1/08

Respectfully submitted,

/s/ John M. Shoreman

_____

John M. Shoreman
McFadden & Shoreman
1420 New York Ave., N.W.
Suite 700
Washington, D.C.  20005
(202) 638-2100
*Counsel for Respondent*

**AMERICAN ARBITRATION ASSOCIATION**
Washington, D.C.

| | | |
|---|---|---|
| **Regnery Publishing, Inc.,** | ) | |
| Claimant, | ) | |
| | ) | |
| v. | ) | Claim No. 16 459 00290 07 |
| | ) | |
| **Richard Miniter,** | ) | |
| Respondent. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

## RESPONDENT'S REPLY BRIEF

Respondent Richard Miniter, by counsel, submits the following Reply to the Post-Hearing Brief filed by Claimant Regnery Publishing, Inc. ("Regnery").

(1)     Regnery Terminated The Agreement

Regnery argues that Miniter is in breach of contract for failing to deliver the manuscript of *Hunting Zarqawi* after Regnery accepted his proposal for the book. However, Regnery knew full well that Miniter could not personally finance the research and travel necessary to write *Zarqawi* when it advised Mel Berger on March 30, 2006 that *Zarqawi* was accepted as the second book under the publishing agreement (the "Agreement"). (Exhibit 29).  Regnery effected a termination of the Agreement by demanding a second book that it knew Miniter was unable to deliver.

The Agreement does not specify the subject-matter or length of the second book. (Exhibit 1).  Regnery declined Miniter's proposal for a second book he could actually afford to research and write:  *Where Have All The Heroes Gone?* (Exhibit D). This was a transparent effort to "claw-back" advances paid to Miniter for *Disinformation* and avoid Section 9(e) of the Agreement, which requires Miniter to repay advances only in the event of termination prior to publication. (Exhibit 1, ¶ 9(e)).  Regnery entered the

Agreement on the strength of Miniter's proposal for the first book, *Disinformation.*

Regnery has presented no evidence to suggest that advances received by Miniter were for a second book that was not even at the conception stage. Royalties advanced to Miniter, including $25,000 under the publicity expense agreement (Exhibit 2), were paid against future royalties from sales of *Disinformation.* Regnery is still selling *Disinformation* and royalties are still being earned. The Agreement is unambiguous that advanced royalties are recoverable only from sales once *Disinformation* was published. (Exhibit 1, ¶ 9(e)).

(2)    *Jack Bauer* Did Not Implicate Option Clause

Regnery's argument that Miniter breached the option clause by failing to offer his editorial work on *Jack Bauer for President: Terrorism and Politics in 24* (Exhibit 61) is facetious. Miniter simply edited the work of 24 other authors and wrote a short introduction to the book. (Exhibit O). BenBella Books, the publisher, controlled all rights to the work of the 24 writers. Miniter had no right to offer *Jack Bauer* to Regnery. Even if Miniter's editorial work on *Jack Bauer* met the definition a "literary work," which it does not; and, even if the option clause survived termination, which it did not; a condition predicate to the option is that any work offered is owned by Miniter. (Exhibit 1, ¶ 13). Miniter received only $1,000 for his work on *Jack Bauer*. (Exhibit O).

(3)    Speculative Damages Are Not Recoverable

Regnery has failed to support its damages claims for future lost profits arising from non-delivery of a second book or for an alleged violation of the option clause. Regnery has not shown future lost profits with reasonable certainty or established that future lost profits were contemplated by it and Miniter when the Agreement was entered

into.[1]  "Future lost profits for a breach of contract claim are not recoverable unless the plaintiff demonstrates that the defendant's breach caused the loss, liability for the future lost profits was contemplated by the parties at the time the contract was made, and the future lost profits have been proven with reasonable certainty."  *Watson v. Telecommunications, Inc.*, 2000 U.S. Dist. LEXIS 1055, *10 (D.D.C. 2000).  The parties' contemplation of damages in the event of breach is clearly shown in Section 9(e) of the Agreement.  Certainly, Regnery has proven no contrary intent of the parties.

(4)    Attorneys Fees

No authority exists in this arbitration for an award of attorneys fees to Regnery on the basis of Miniter's withdrawal of his counterclaim prior to hearing.  Regnery's reliance on the inherent powers of a federal court and Rule 41(a)(2) of the Federal Rules of Civil Procedure is misplaced.  The arbitration clause governing this dispute provides for resolution "in accordance with the laws of the District of Columbia" and the AAA rules.  (Exhibit 1, ¶ 14).  An arbitrator's authority derives solely from the parties' contract. *See, Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 744 (1981).

Neither the Agreement, nor the AAA rules, provide for attorneys fees in the event of a withdrawal of claims prior to hearing.  There is no contractual authority for imposition of attorneys fees in this case.  Regnery has conceded Miniter's motion to strike its attorneys fees demand that was premised erroneously on the publicity expense agreement. (Exhibit 2).  Moreover, it is unclear from Regnery's proffer that attorneys fees of $15,875.55 are reasonable or in fact limited to fees that relate to Miniter's counterclaim, as opposed to Regnery's opposition to the addition of related

---

[1] Since Regnery offers nothing but vague or speculative proof of damages, it would be entitled to no more than nominal damages if liability is determined.  *Roth v. Speck*, 126 A.2d 153, 155 (D.C. 1956).

counterclaims. Absent some measure of reasonableness, and lacking any lawful authority, Regnery's fees request must be denied.

(5)    Set-Off

Regnery has not provided the additional royalty statements that it represented it would to establish a potential set-off of damages. Miniter requests that the record be kept open until Regnery fulfills the commitment it made at hearing.

WHEREFORE, Miniter requests the Arbitrator to deny Regnery's claims in their entirety.

Dated: 2/8/08                                    Respectfully submitted,

                                                /s/ John M. Shoreman
                                                _____
                                                John M. Shoreman
                                                McFadden & Shoreman
                                                1420 New York Avenue, NW
                                                7th Floor
                                                Washington, D.C.  20005
                                                (202) 638-2100
                                                *Attorneys for Claimant*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Reply Brief was served via electronic transmission on the following counsel of record this 8th day of February, 2008.

                    Mark I. Bailen, Esq.
                    Baker & Hostetler LLP
                    1050 Connecticut Avenue, NW
                    Suite 1100
                    Washington, D.C.  20036
                                /s/ John M. Shoreman
                                _____
                                John M. Shoreman

4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| REGNERY PUBLISHING, INC., | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:08-cv-00709 (EGS) |
| | ) | |
| RICHARD MINITER, | ) | |
| Respondent. | ) | |
| _____ | ) | |

**ORDER**

Upon consideration of Respondent's Motion to Vacate the arbitration award

entered in favor of Petitioner on March 10, 2008, it is this ___ day of _____, 2008,

**ORDERED** that the arbitration award is hereby vacated.


_____
Emmet G. Sullivan
U.S. District Judge



Copies to:

John M. Shoreman
McFadden & Shoreman
1420 New York Ave., NW
7th Floor
Washington, D.C.  20005

Mark I. Bailen
Baker & Hostetler, LLP
1050 Connecticut Ave., NW
Suite 1100
Washington, D.C.  20036